## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Charles David Sackett,                          File No. 13-cv-01218 (ADM/TNL)

        Plaintiff,

v.                                              **REPORT &**
                                                **RECOMMENDATION**
Jeff Singer and Steven Buswell,

        Defendants.

Charles David Sackett, 8095 West Sixth Street, Minnesota City, MN 55959; and

Hannah Okins and Leonard J. Schweich, Jardine Logan & O'Brien PLLP, 8519 Eagle Point Boulevard, Suite 100, Lake Elmo, MN 55042 (for Defendants Jeff Singer and Steven Buswell).

## I.     INTRODUCTION

This matter is before the Court, United States Magistrate Judge Tony N. Leung, on Defendants Jeff Singer and Steven Buswell's Motion for Summary Judgment (ECF No. 21). This motion has been referred to the undersigned for a Report and Recommendation to the District Court, the Honorable Ann D. Montgomery, United States District Court Judge for the District of Minnesota, under 28 U.S.C. § 636 and D. Minn. LR 72.1. For the reasons that follow, **IT IS HEREBY RECOMMENDED** that Defendants' Motion for Summary Judgment (ECF NO. 21) is **GRANTED**.

## II.     BACKGROUND

Sackett brings this action under 42 U.S.C. § 1983, alleging that Defendants Singer and Buswell violated his right to be free from cruel and unusual punishment under the

Eighth Amendment of the United States Constitution. (Compl. at 3.) "In considering a motion for summary judgment, a court 'must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the non-moving party.'" *Tommassello v. Stine*, 642 F. Supp. 2d 910, 917 (D. Minn. 2009) (quoting *Withrop Res. Corp. v. Eaton Hydraulics, Inc.*, 361 F.3d 465, 468 (8th Cir. 2004)).

On July 22, 2009, Sackett, an inmate at the Winona County Jail, was scheduled to appear in court for trial. (Dep. at 81, ECF No. 24.) Detention Deputy Tiffany Delander ("Delander") informed Sackett that Winona County Jail staff would escort Sackett to court. (Buswell Aff. at Ex. 1, ECF No. 25.) Sackett had previously been allowed to walk to court appearances unattended and was opposed to the news of a staff escort. (*Id.*) Sackett expressed his disagreement with this decision by making comments to jail staff and requesting to phone his attorney. (*Id.*)

Defendant Singer escorted Sackett into a locker room to allow Sackett to change into a suit for his court appearance. (Dep. at 81.) The locker room did not contain a security camera. (*Id.*) As Sackett changed into his suit, he attempted to make small talk with Singer. (*Id.* at 84.) Although the specifics of the conversation are contested, it is undisputed that Singer told Sackett to stop speaking and that Sacket continued speaking. (*Id.* at 84, 99.) Detention Deputy Tony Walinski ("Walinski") reported hearing Singer "instruct . . . Sackett multiple times to be quiet and/or drop the subject [of the escort]." (Buswell Aff. at Ex. 3.) It is also undisputed that Sackett did not follow this instruction. (Dep. at 84, 99; *see* Buswell Aff. at Ex. 3.) Delander's incident report states that Sackett

and Singer's raised voices could be heard from outside the locker room. (Buswell Aff. at Ex. 1.) Additionally, Walinski's incident report states that "Sackett was yelling directly at [Singer]." *Id.* at Ex. 3. Sackett has not contested the accuracy of these incident reports.

In response to Sackett's failure to follow instructions, Singer went on a "rampage," flipped over a table, and grabbed Sackett by the throat against the lockers. (Dep. at 83–84.) Singer had his hand on Sackett's throat for between two and five seconds. (*Id.* at 88.) Singer did not touch any other part of Sackett's body. (*See id.*) Sackett was able to breathe while Singer's hand was on Sackett's throat, but he maintains it was difficult. (*Id.* at 97.) Walinski's view of the two men was obstructed, and he did not see Singer touch Sackett. (Buswell Aff. at Ex. 3.) Sackett asserts that he "had a hard time breathing for a while after Officer Singer choke slammed [him] against the lockers." (Pl.'s Answers to Interrogs. at ¶ 3, ECF No. 24.) Sackett also felt "a little bit light headed." (*Id.*) The incident left marks on Sackett's neck, which quickly faded and disappeared the next day. (Dep. at 95.) In addition, Sackett has indicated that this event has induced severe anxiety. (Pl.'s Answers to Interrogs. at ¶ 4.)

Sackett filed an Inmate Request Form after the incident, in which he stated a "formal grievance" against Singer and briefly described the event. (ECF No. 24, Ex. 1.) On July 25, 2009, Sackett met with Winona County Jail Administrator Buswell. (Tr., ECF No. 24.) During this meeting, Sackett recounted his version of the event, and Buswell took pictures of Sackett's neck. (*See* Tr. at 9–10.) These were the only pictures taken of Sackett's neck following the incident. (Dep. at 93.) During the meeting, Buswell informed Sackett that a formal investigation would follow; Buswell also ensured that

Sackett felt comfortable remaining at the Winona County facility. (Tr. at 5–7.) Buswell conducted an administrative investigation, in which he took statements from the officers involved. (Buswell Aff.) Shortly after the event in question, Sackett was transferred to another detention facility. (Dep. at 98.)

On May 21, 2013, Plaintiff Charles David Sackett ("Sackett") filed a complaint (Compl., ECF No. 1) under 42 U.S.C. § 1983 alleging a violation of his Eighth Amendment right to be free from cruel and unusual punishment. Sackett alleges that Defendant Jeff Singer ("Singer") "choke slammed" him against a set of lockers, and that Defendant Steven Buswell ("Buswell") "stood by and did nothing" after Sackett filed a grievance and formal complaint. (*Id.* at 3–4.) Sackett's complaint seeks compensatory damages from each Defendant, jointly and severally, in the amount of $75,000 and punitive damages from each Defendant, jointly and severally, in the amount of $250,000. (*Id.* at 4.)

On October 14, 2014, Defendants Singer and Buswell filed a joint motion for Summary Judgment (ECF No. 21). On October 27, 2014, this Court issued a Case Management Order (ECF No. 27) stating that Plaintiff's response to the Defendants' Motion was due on or before November 23, 2014. (*Id.* at 1.) Sackett did not file a response with the Court.

## III.   ANALYSIS

A court shall grant a motion for summary judgment where the movant has demonstrated that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). It is the movant's burden to

4

demonstrate that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[A] dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case." *Amini v. City of Minneapolis*, 643 F.3d 1068, 1074 (8th Cir. 2011) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 252 (1986)).

### A.  Singer's Use of Force Was Reasonable

"When confronted with a claim of excessive force alleging a violation of the Eighth Amendment, the core judicial inquiry is 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Santiago v. Blair*, 707 F.3d 984, 990 (8th Cir. 2013) (quoting *Hudson v. McMillian*, 503 U.S. 1, 6–7 (1992)). The Supreme Court has "clarified that the extent of any resulting injury, while material to the question of damages and informative as to the likely degree of force applied, is not in and of itself a threshold requirement for proving this type of Eighth Amendment claim." *Williams v. Jackson*, 600 F.3d 1007, 1012 (8th Cir. 2010) (summarizing analysis from *Wilkins v. Gaddy*, 559 U.S. 34 (2010) (per curiam)). "[T]he Court expressly rejected the theory that lower courts may dismiss such claims based solely on the *de minimis* nature of the resulting injury," but "left open the possibility of dismissal where the injury conclusively shows that the force applied was not unconstitutional." *Id.*

The key question in the instant matter is "not whether a certain quantum of injury was sustained, but whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Wilkins*, 559 U.S. at 37

(quotation and citation omitted); *Johnson v. Blaukat*, 453 F.3d 1108, 1112 (8th Cir. 2006). Not every malevolent touch by a prison guard gives rise to an excessive force claim, and accordingly, a *de minimis* application of force may support a conclusion that the force applied was not unconstitutional. *Williams*, 600 F.3d at 1012; *see also Wilkins*, 559 U.S. at 38 ("An inmate who complains of a 'push or shove' that causes no discernible injury almost certainly fails to state a valid excessive force claim.").

Sackett asserts that Singer used excessive force when he "choke slammed" Sackett against a locker "for no reason whatsoever." However, the three unchallenged incident reports filed by Winona County Jail staff indicate that Sackett was not following Singer's instructions. Although the exact content of the locker room conversation between Sackett and Singer is unclear, it is undisputed that Singer told Sackett to stop speaking and that Sackett did not follow this instruction. Delander's incident report states that Sackett and Singer were using raised voices and could be heard from outside the locker room. Walinski's incident report also states that Singer instructed "Sackett multiple times to be quiet," and "Sackett was yelling directly at [Singer]." Sackett has not contested these incident reports. In an effort to restore order—and in direct response to Sackett's failure to follow instructions—Singer employed physical force. This force lasted between two and five seconds. Sackett was able to breathe during this "choke slam." Additionally, Singer's action resulted in marks on Sackett's neck, which faded shortly after the incident and were not visible shortly thereafter.

In responding to Sackett's failure to follow instructions, Singer was justified in his application of physical force as a means to restore order and ensure Sackett continued to

prepare for his court appearance. *See Irving v. Dormire*, 519 F.3d 441, 446 (8th Cir. 2008) ("Because the use of force is sometimes required in prison settings, guards are liable only if they are completely unjustified in using force."). Moreover, Sackett did not receive any lasting injuries. *See Wilkins*, 559 U.S. at 37 ("The extent of injury may also provide some indication of the amount of force applied."). Nothing in the record supports an inference that Singer's conduct was spurred by malicious or sadistic motivations. *See Burns v. Eaton*, 752 F.3d 1136, 1140 (8th Cir. 2014) ("Nor is there evidence that the force used was so greatly in excess of that needed to restore and maintain order as to raise a reasonable inference of malicious motive.").

In conclusion, Sackett failed to comply with Singer's instruction. Undisputed facts on the record show that that Singer instructed Sackett to be quiet multiple times, Sacket continued to speak at Singer, and others were able to hear raised voices coming from inside the locker room. Even if Singer were not entitled to qualified immunity, an issue this Court need not address, the undisputed record establishes that Singer applied reasonable force in a good-faith effort to restore discipline, and this application of force was not motivated by malicious or sadistic intent. Therefore, based on all of the files, records, and proceedings herein, the Court recommends that Defendants' Motion be granted with regard to Sackett's claim against Singer.

### B.  Buswell's Investigation Was Not Deliberately Indifferent

Sackett also alleges that his Eighth Amendment rights were violated by Buswell in the wake of the July 22, 2009 incident. Sackett's claim against Buswell is based on

Buswell's administrative role in the Winona County Jail and his alleged failure to take action in response to the incident.

Within the corrections system, an isolated incident "usually provides an insufficient basis on which to assign supervisory liability." *Howard v. Adkison*, 887 F.2d 134, 138 (8th Cir. 1989) (citing *Williams v. Willits*, 853 F.2d 586, 588 (8th Cir. 1988)). "Supervisors are not liable for Eighth Amendment claims brought under section 1983 on a respondeat superior theory." *Howard*, 887 F.2d at 137 (citing *Wilson v. Cross*, 845 F.2d 163, 165 (8th Cir. 1988)). The Eighth Circuit has held that supervisors at detention facilities can be held liable under the Eighth Amendment in two ways either (1) for their personal involvement in a constitutional violation, or (2) when their corrective inaction amounts to deliberate indifference to or tacit authorization of the violative practices. *Choate v. Lockhart*, 7 F.3d 1370, 1376 (8th Cir. 1993) (internal quotations and citations omitted). It is undisputed that Buswell was not personally involved in the July 22, 2009 incident. Therefore, this Court must determine whether Buswell was deliberately indifferent in conducting his investigation into the July 22 incident.

In response to the July 22, 2009 incident, Buswell interviewed and took statements from Sackett, Singer, Delander, and Walinski. These interviews encompassed all of the individuals involved in the events giving rise to this matter. In addition to Sackett's statement and interview, Buswell documented any potential injuries by photographing Sackett's neck. Buswell also ensured that Sackett was comfortable remaining at the Winona County facility. Following Buswell's administrative investigation, he responded

accordingly based on his professional judgment. These facts demonstrate that Buswell's administrative response did not constitute deliberate indifference.

Further, the record lacks any indication that the event in question is part of a pattern of conduct rather than an isolated incident. Sackett did not have a history of problems with Singer, or any other members of the Winona County Jail staff, before or after the July 22, 2009 incident. Sackett has also failed to present any similar events involving other inmates or staff at the Winona County Jail.

In conclusion, Buswell was not personally involved in the July 22, 2009 incident, and his administrative response did not constitute inaction amounting to indifference. Rather, Buswell investigated this matter by interviewing Sackett and the officers involved. Therefore, based on all of the files, records, and proceedings herein, the Court recommends that Defendants' Motion be granted with regard to Sackett's claim against Buswell.

## IV.    RECOMMENDATION

Based upon the file, record, memoranda, and proceedings herein, **IT IS HEREBY RECOMMENDED** that Defendants Singer and Buswell's Motion for Summary Judgment (ECF No. 21) be **GRANTED**, and this matter be **DISMISSED WITH PREJUDICE**.

Date: June 1, 2015                                    s/ Tony N. Leung
_____
Tony N. Leung
United States Magistrate Judge
for the District of Minnesota

*Sackett v. Singer & Buswell*
File No. 13-cv-1218 (ADM/TNL)

Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court and by serving upon all parties written objections that specifically identify the portions of the Report to which objections are made and the basis of each objection. This Report and Recommendation does not constitute an order or judgment from the District Court and it is therefore not directly appealable to the Circuit Court of Appeals. Written objections must be filed with the Court before **JULY 1, 2015**.